■ BETTY WATSON, as Mother and Natural Guardian of ANTHONY WATSON, an Infant, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 59054.)—Appeal from an order of the Court of Claims, entered October 22, 1975, which granted claimant's motion for discovery and denied the State's cross motion for an order requiring claimant to execute certain medical authorization forms and to submit to a narrative oral examination before trial as to certain acts. With respect to the documents which the Court of Claims ruled discoverable, section 372 of the Social Services Law is not applicable since none of the contested documents are records within the meaning of paragraphs (a) through (i) of subdivision 1 of said section. Exhibits 7 through 10 are statements made by students at the center during the investigation of the incident and do not fall within the confidential information relating to committed children protected by section 372. Exhibit

14 was objected to as being an ombudsman report, but it was properly held discoverable as being reports made in the normal course of business (see *Wilson v State of New York,* 36 AD2d 559). Finally, the Memos-Watson file concerns the claimant himself, and, certainly, claimant may obtain discovery of this file (see *Paine v Chick,* 50 AD2d 686). As to the question of medical authorizations, CPLR 3121 evidences a liberal policy of disclosure where a party puts his physical or mental condition in controversy *(Koump v Smith,* 25 NY2d 287, 295). Here, it is urged that the physical condition of Anthony Watson's chin is the only physical condition at issue, and, accordingly, discovery should be limited only to records related thereto. However, the claim asserts that Watson "was caused to sustain severe and serious personal injuries to his mind and body". Thus, since the claim makes broad allegations of injury, the claimant has not sustained his burden of showing the records sought are not sufficiently related to his condition as not to be discoverable (see *Josephs v Oliver,* 48 AD2d 688; *Mancinelli v Texas Eastern Transmission Corp.,* 34 AD2d 535). Execution of the medical authorization should, therefore, have been ordered. Similarly, the questioning relating to Watson's prior violent acts should have been allowed. It is not disputed that prior illegal and immoral acts underlying an adjudication of juvenile delinquency may properly be used for impeachment purposes *(People v Duffy,* 36 NY2d 258), and in an examination before trial unless a question is clearly violative of a witness' constitutional rights, or of some privilege recognized in law, or is palpably irrelevant, questions should be freely permitted and answered, since all objections other than as to form are preserved for the trial and may be raised at that time *(Freedco Prods. v New York Tel. Co.,* 47 AD2d 654). Thus, although any answers elicited may well be unusable or limited in use at a subsequent trial, they should, nevertheless, not have been disallowed on discovery (e.g. *Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403). As to the final dispute over the use of narrative testimony in addition to specific questions and answers, such use is clearly within the discretion of the court. Thus, since such form of testimony is generally disfavored (see 8 Carmody-Wait 2d, NY Prac, § 56:108) and since the circumstances surrounding the incident were easily available to the appellant from its own employees, we find no basis to disturb the determination of the court. Order modified, on the law and the facts, by reversing so much thereof as denied the cross motion of the State to require the execution of medical authorization and to direct Anthony Watson to answer certain questions relating to prior violent acts and by granting said portions of the cross motion, and, as so modified, affirmed, without costs. Greenblott, J. P., Sweeney, Mahoney, Herlihy and Reynolds, JJ., concur.